ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| IRIS M. RODRÍGUEZ NUÑEZ, JULIO RIVERA RODRÍGUEZ Y RICARDO RIVERA RODRÍGUEZ<br><br>Apelante<br><br>v.<br><br>SERVICIOS MEDICOS UNIVERSITARIOS INC. DRA. JOHANA SANTIAGO TORRES Y SIMED<br><br>Apelada | **TA2025AP00671** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Ponce<br><br>Civil Núm. J DP2012-0518 (605)<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Juez Aldebol Mora.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos la Sra. Iris M. Rodríguez Núñez (señora Rodríguez Núñez) y sus hijos Julio Rivera Rodríguez y Ricardo Rivera Rodríguez (en conjunto, parte apelante) mediante un *Escrito de Apelación* para solicitarnos la revisión de la *Sentencia* emitida el 8 de julio de 2025.[2] Mediante esta, el foro de instancia declaró *No Ha Lugar* la *Demanda* incoada por la parte apelante y condenó a ésta al pago de las costas y gastos incurridos en el pleito y al pago de la cantidad de $2,000.00 por concepto de honorarios de abogados.

Por los fundamentos que expondremos a continuación, se **CONFIRMA** la *Sentencia* apelada.

---

[1] Ver Orden Administrativa OATA-2025-250 del 18 de diciembre de 2025.

[2] *Sentencia*, entrada núm. 2 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

**I.**

El 6 de diciembre de 2012, la parte apelante presentó una *Demanda* sobre daños y perjuicios contra Servicios Médicos Universitarios, Inc., h/n/c la Casa del Veterano (la Casa del Veterano), la Dra. Johanna Santiago Torres (Dra. Santiago Torres) (en conjunto, parte apelada) y otros.[3] Según surge de la *Demanda*, la señora Rodríguez Nuñez es la viuda del señor Julio Rivera Rivera (señor Rivera Rivera) y Julio y Ricardo Rivera Rodríguez son los hijos que le sobreviven. Por otro lado, la parte apelante sostuvo que el señor Rivera Rivera fue admitido como residente en la Casa del Veterano. Adujo que en el récord médico del señor Rivera Rivera aparece una nota con fecha del 9 de diciembre de 2011 en la cual se acredita que sufrió una caída a causa de una severa convulsión. Expresó que el señor Rivera Rivera resultó con una herida abierta en la nariz y, aunque no se desprende del récord médico, sufrió lesiones en distintas partes del cuerpo. Posteriormente, el señor Rivera Rivera fue trasladado a la sala de emergencias del Hospital San Cristóbal en Ponce, toda vez que una doctora le diagnosticó convulsiones y trauma en el rostro. Añadieron que, el señor Rivera Rivera había sido atendido en el hospital y, posteriormente, fue dado de alta y devuelto a la Casa del Veterano con un diagnóstico de pequeña fractura lineal en la nariz y trauma corporal múltiple. Alegó que, el señor Rivera Rivera fue nuevamente evaluado por una enfermera en la Casa del Veterano y mantuvo el tratamiento inalterado. A su vez, esbozó que el señor

---

[3] *Demanda*, entrada núm. 1 en SUMAC.

Rivera Rivera no volvió a caminar, por lo que permaneció encamado. Indicó que, como consecuencia, al señor Rivera Rivera le salieron úlceras las cuales permanecieron sin tratarse adecuadamente. Por otra parte, expresó que el 20 de diciembre de 2011, el señor Rivera Rivera presentó movimientos involuntarios y poca respuesta a estímulos. Sostuvo que llamaron a la doctora del turno pero que esta no contestó la llamada hasta dos horas y media más tarde. Explicó que una enfermera observó al señor Rivera Rivera con dificultad respiratoria, 85% de saturación de oxígeno, febril, y taquicárdico, por lo que la enfermera se comunicó con una de las doctoras. Indicó que la doctora lo trasladó al cuarto de tratamiento y llamaron al 911 para trasladarlo al hospital. Alegó que el señor Rivera Rivera no se encontraba responsivo y que la ambulancia lo llevó al Hospital San Cristóbal. Sostuvo que todas las condiciones agudas de emergencia con las que llegó el señor Rivera Rivera al hospital fueron resultado de la dejadez y negligencia del personal de la Casa del Veterano en el cuidado médico-hospitalario. Explicó que la caída sufrida por el señor Rivera Rivera ocasionó que uno de los aditamentos implantados en su espalda para estabilizar las vértebras de la columna vertebral se curveara. A su vez, indicó que los días que siguieron en el Hospital San Cristóbal evidenciaron un deterioro consistente en la condición de salud del señor Rivera Rivera.

Por otra parte, alegó que el 30 de diciembre de 2011, el señor Rivera Rivera sufrió un paro cardiorrespiratorio del cual no pudo ser reanimado, por lo que fue declarado muerto. Indicó que la parte apelada

le brindó al señor Rivera Rivera un cuidado incorrecto y negligente, por lo que es responsable por los daños ocasionados. En consecuencia, esbozó que tanto la señora Rodríguez Núñez como los hijos que le sobreviven al señor Rivera Rivera, han sufrido daños morales y angustias mentales por la cantidad de $1,000,000.00 cada uno. A tenor, solicitó que se condenara a la parte apelada al pago de los daños reclamados, así como costas e intereses legales. Además, solicitó que, en caso de encontrar que la parte apelada ha incurrido en temeridad, se le condenara al pago de intereses legales.

Posteriormente, el 4 de febrero de 2013, la parte apelante presentó una *Demanda Enmendada*.[4] En esta, esbozó las mismas alegaciones presentadas en las *Demanda*. Además, enumeró cuáles, a su entender, fueron las desviaciones de la mejor práctica de la medicina cometidas por el personal médico, así como por el personal de enfermería de la Casa del Veterano y de la sala de emergencia del Hospital San Cristóbal.

En respuesta, el 12 de abril de 2013, la Casa del Veterano presentó *Contestación a Demanda Enmendada*.[5] En esta, negó la mayoría de las alegaciones presentadas en la *Demanda Enmendada*.

Luego, el 23 de septiembre de 2013, la parte apelante presentó una *Segunda Demanda Enmendada*.[6] Mediante esta, aclaró que la doctora que atendió al señor Rivera Rivera y decidió mantener inalterado su tratamiento fue la Dra. Santiago Torres. Asimismo, indicó que la Dra. Santiago Torres fue la que atendió al

---

[4] *Demanda Enmendada*, entrada núm. 3, págs. 156-166 en SUMAC.
[5] *Contestación a Demanda Enmendada*, entrada núm. 3, anejo núm. 3, págs. 178-182 en SUMAC.
[6] *Segunda Demanda Enmendada*, entrada núm. 3, págs. 167-177 en SUMAC.

señor Rivera Rivera cuando regresó del Hospital San Cristóbal y la que volvió a ordenar su traslado.

Posteriormente, el 22 de noviembre de 2013, la Casa del Veterano presentó su *Contestación a Segunda Demanda Enmendada*.[7] En esta, negó la mayoría de las alegaciones esbozadas en la *Demanda* y presentó sus defensas afirmativas. En lo pertinente, alegó que actuó con la debida prudencia y razonabilidad y dentro de las normas mínimas de conocimiento y cuidado médico aplicables. Esbozó que no responde por los daños alegados por la parte apelante. En virtud de lo anterior, solicitó que se declarara *No Ha Lugar* la *Demanda* instada por la parte apelante.

Por su parte, el 1 de diciembre de 2015, la Sra. Santiago Torres presentó su *Contestación a Demanda Enmendada*.[8] Mediante esta, negó la mayoría de las alegaciones presentadas en la *Demanda*. Asimismo, presentó sus defensas afirmativas. En lo pertinente, adujo que no fue negligente ni actuó culposamente en el tratamiento brindado al señor Rivera Rivera. Ante ello, solicitó que se desestimara la *Demanda* incoada por la parte apelante y se le impusiera a esta el pago de las costas, gastos, y honorarios de abogado.

Durante el 2015 al 2023 ocurrieron varias instancias procesales innecesarias de pormenorizar.[9] Posteriormente, el juicio en su fondo en el presente caso fue celebrado los días 21, 22 y 23 de junio de 2023;

---

[7] *Contestación a Segunda Demanda Enmendada*, entrada núm. 3, anejo núm. 3, págs. 183-190 en SUMAC.
[8] *Contestación a Demanda Enmendada*, entrada núm. 3, anejo núm. 3, págs. 191-197 en SUMAC.
[9] Conviene mencionar que la parte apelante presentó un apéndice del recurso limitado de manera que esta Curia se tuvo que circunscribir a la relación de hechos esgrimida por el Tribunal de Instancia en la Sentencia objeto de este recurso.

6 y 7 de julio de 2023; 27, 28, 29 de noviembre de 2023; 18 de diciembre de 2023; 24, 26, 29, 30 y 31 de enero de 2024; 1 y 2 de febrero de 2024; 12 de marzo de 2024; 18, 20, 25, 26 y 28 de junio de 2024; 6, 7 y 26 de agosto de 2024; 20 y 25 de septiembre de 2024; 13, 15 y 22 de noviembre de 2024; 6 y 18 de diciembre de 2024 y 8 de enero de 2025. Durante el juicio, el foro de instancia recibió prueba testimonial y documental. Por la parte apelante, atestiguó la señora Rodríguez Núñez; los señores Rivera Rodríguez; el Dr. Manuel Pérez Pabón (Dr. Pérez Pabón), en calidad de perito en medicina general; el Dr. Luis Francisco Acevedo Rodríguez (Dr. Acevedo Rodríguez), en calidad de psiquiatra de la señora Rodríguez Núñez; y la Dra. Santiago Torres. Por otro lado, de la parte apelada, se presentó el testimonio de la Dra. Santiago Torres; la Dra. Anibelle Altieri (Dra. Altieri); el Dr. Luis Catoni (Dr. Catoni); y el Dr. Carlos Grovas (Dr. Grovas).

Tiempo después, evaluada la prueba presentada, el 8 de julio de 2025, el foro de instancia emitió *Sentencia* mediante la cual declaró No Ha Lugar la *Demanda* y condenó a la parte apelante al pago de costas y gastos necesariamente incurridos en el pleito, así como la cantidad de $2,000.00 por concepto de honorarios de abogado. En esta, el foro primario formuló 998 determinaciones de hechos. Además, dispuso que todos los testigos periciales, incluyendo el perito contratado por la parte apelante, coincidieron en que la Dra. Santiago Torres trató adecuadamente al señor Rivera Rivera. Determinó que el historial médico de la Casa del Veterano documenta que, tanto la Dra. Santiago Torres como la Casa del Veterano, no se apartaron en

forma alguna de la mejor práctica de la medicina en los cuidados médicos y atenciones al señor Rivera Rivera. Expresó que el perito de la parte apelante no logró rebatir la presunción de corrección del tratamiento médico ni logró convencer al tribunal de que el tratamiento médico brindado fuera negligente ni que se apartara de la mejor práctica de la medicina. Además, determinó que dicho perito tampoco logró establecer que la parte apelada contribuyera al empeoramiento de las condiciones que padecía el señor Rivera Rivera o al desarrollo de otras condiciones o enfermedades contributorias a la muerte de este. El foro de instancia determinó que la prueba pericial de la parte apelante fue insuficiente para rebatir la presunción de tratamiento médico adecuado. Lo anterior, debido a que el perito presentado por la parte apelante no estableció las normas mínimas de conocimiento y cuidado médico aplicables al campo de la medicina para la Dra. Santiago Torres ni la desviación a la mejor práctica de la medicina. Ante ello, concluyó que la parte apelante no probó la alegada negligencia o impericia médica por parte de la Dra. Santiago Torres ni de la Casa del Veterano.

En desacuerdo, el 23 de julio de 2025, la parte apelante presentó una *Moción de Reconsideración, Solicitud de Determinaciones de Hechos Adicionales o Sustantivas y Enmiendas a la Sentencia*.[10] Mediante esta, presentó una propuesta de 233 determinaciones de hechos adicionales. Además, alegó que el foro primario ignoró múltiples hechos medulares, expresamente admitidos por

---

[10] *Moción de Reconsideración, Solicitud de Determinaciones de Hechos Adicionales o Sustantivas y Enmiendas a la Sentencia*, entrada núm. 3, anejo núm. 5 en SUMAC.

la parte apelada y sus tres peritos, y omitió valorar elementos esenciales de la prueba. Por otra parte, señaló que el foro de instancia le impuso el pago de $2,0000 por concepto de honorarios de abogado sin ofrecer justificación alguna, exposición de hechos específicos ni análisis doctrinal que respaldara dicha imposición. Por lo anteriormente expuesto, solicitó la reconsideración de la *Sentencia* emitida el 8 de julio de 2025.

El 17 de julio de 2025 el foro de instancia emitió *Resolución* mediante la cual declaró No Ha Lugar la *Moción de Reconsideración, Solicitud de Determinaciones de Hechos Adicionales o Sustantivas y Enmiendas a la Sentencia* presentada por la parte apelante.[11]

Inconforme, el 15 de diciembre de 2025, la parte apelante presentó el recurso de epígrafe y esbozó los siguientes señalamientos de error:

> Primer Error: Erró el Tribunal de Primera Instancia al restar valor decisivo al hallazgo de tromboembolismo pulmonar consignado en la autopsia y aceptar, sin examen crítico, la tesis conceptualmente equivocada de que el trombo encontrado "no estaba dentro del pulmón", con lo cual expulsó del análisis judicial la secuencia causal probada de caída → inmovilidad → trombosis venosa profunda (DVT) → embolia pulmonar → sepsis y fallo multiorgánico que explicaba el fallecimiento de Don Julio Rivera Rodríguez.
>
> Segundo Error: Erró el Tribunal de Primera Instancia al concluir que la profilaxis tromboembólica no procedía porque Don Julio "no reunía los criterios" y, además, "por el lugar donde se encontraba", adoptando así un marco de análisis equivocado que distorsionó la apreciación de la prueba y del nexo causal.
>
> Tercer error: Erró el Tribunal de Primera Instancia al concluir que los apelantes no probaron negligencia institucional de Servicios Médicos Universitarios, Inc. ni

---

[11] *Resolución*, entrada núm. 3, anejo núm. 4 en SUMAC.

negligencia profesional de la Dra. Johanna Santiago, a pesar de las determinaciones de hecho que surgen en torno al perito de los apelantes y del propio testimonio de la doctora, presentada como parte adversa.

Cuarto Error: Erró el Tribunal de Primera Instancia al manejar de forma desigual la prueba pericial y los turnos de presentación de la evidencia, creando un patrón procesal que configura una apariencia objetiva de prejuicio o parcialidad en favor de la parte apelada, incompatible con la neutralidad exigible al juzgador de hechos.

Quinto Error: Erró el Tribunal de Primera Instancia al imponer honorarios de abogado por temeridad sin base fáctica ni jurídica, pese a tratarse de un caso complejo sustentado en prueba pericial seria, autopsia y récord clínico voluminoso.

El 19 de diciembre de 2025, emitimos una *Resolución* en la cual le concedimos a la parte apelada el término dispuesto en el Reglamento de este Tribunal, según enmendado, 2025 TSPR 42, para presentar su alegato.[12] El 10 de abril de 2026, la parte apelante presentó la exposición narrativa de la prueba.[13] De ahí, el 13 de abril de 2026, emitimos una *Resolución* en la cual le concedimos a la parte apelante hasta el 4 de mayo de 2026 para presentar su alegato suplementario y, a la parte apelada, hasta el 25 de mayo de 2026 para presentar su alegato.[14] Luego de una prórroga, la parte apelada presentó su exposición comentada de la exposición narrativa.[15] En respuesta, el 7 de mayo de 2026, emitimos una *Resolución* mediante la cual dimos por presentadas la exposición narrativa y las versiones comentadas.[16] Por otra parte, el 4 de mayo de 2026, la parte apelante

---

[12] *Resolución*, entrada núm. 9 en SUMAC TA.
[13] *Moción Informando Cumplimiento de la Parte Apelante con el Proceso de Estipulación de la Exposición Narrativa de la Evidencia, Incumplimiento de las Partes Apeladas y Otro Extremo*, entrada núm. 31 en SUMAC TA.
[14] *Resolución*, entrada núm. 32 en SUMAC TA.
[15] *Moción en Relación a la Exposición Narrativa no Estipulada Sometida por la Parte Demandante*, entrada núm. 44 en SUMAC TA.
[16] *Resolución*, entrada núm. 46 en SUMAC TA.

presentó un *Alegato de los Apelantes*, en cumplimiento con la Resolución emitida el 13 de abril de 2026. Asimismo, el 26 de mayo de 2026, la parte apelada presentó su *Alegato en Oposición*, toda vez que el 25 de mayo de 2025 fue día feriado.[17] Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver el recurso de epígrafe.  Veamos.

**II.**

**-A-**

Nuestro Tribunal Supremo ha puntualizado que los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos de los tribunales de instancia. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).  Al respecto, la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, expresamente dispone que las determinaciones de hechos de los tribunales de primera instancia basadas en testimonio oral, como norma general, no se dejarán sin efecto.  Ello, a menos que sean claramente erróneas y que, además, se debe dar consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos.

La deferencia que los foros revisores debemos hacia el foro primario responde al hecho de que es el juez sentenciador quien tiene la oportunidad de recibir y apreciar toda la prueba oral presentada, así como de escuchar la declaración de los testigos y evaluar su conducta y confiabilidad. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67 (2009)*; López v. Dr.*

---

[17] *Alegato en Oposición*, entrada núm. 50 en SUMAC TA.

*Cañizares*, 163 DPR 119, 135 (2004). Esto es así, pues se trata del juez ante quien declaran los testigos. Es, además, quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran. Todos estos factores van formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Suárez Cáceres v. Com. Estatal Elecciones*, supra, pág. 68. Por tanto, le compete al foro apelado la tarea de aquilatar la prueba testifical que ofrecen las partes y dirimir su credibilidad. *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011).

No obstante, la doctrina de deferencia judicial no es de carácter absoluto, pues debe ceder ante las posibles injusticias que puedan acarrear unas determinaciones de hechos que no estén sustentadas por la prueba desfilada ante el foro primario. *Pueblo v Irizarry Irizarry*, 156 DPR 780, 797-798 (2002). Por lo tanto, como foro apelativo, podemos intervenir con la apreciación de la prueba oral que haga el Tribunal de Primera Instancia, cuando dicho foro actúe con pasión, prejuicio o parcialidad, o incurra en un error manifiesto al aquilatarla. *González Hernández v. González Hernández*, supra; *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *Meléndez v. Caribbean Int´l News*, 151 DPR 649, 664 (2000).

Por consiguiente, podremos intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y, cuando dicho ejercicio se distancie de la

realidad fáctica o cuando esta sea inherentemente imposible o increíble. *González Hernández v. González Hernández*, supra, pág. 777; *Pueblo v. Santiago et al.,* 176 DPR 133, 148 (2009). Sin embargo, se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos estamos en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández*, supra.

En fin, si no percibimos que el Tribunal de Primera Instancia haya cometido un error manifiesto en la aplicación del derecho, que haya indicios de pasión, prejuicio o parcialidad en la apreciación de la prueba, no nos corresponde sustituir el juicio de dicho foro por nuestras apreciaciones, basadas únicamente en un examen del expediente del caso. Ello, a menos que, luego de realizar un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos, llegamos a conclusiones distintas a las del foro primario. *González Hernández v. González Hernández*, supra, págs. 776-777.

-B-

Los actos y omisiones en que intervenga cualquier género de culpa o negligencia son fuentes de obligaciones que generan responsabilidad civil extracontractual. Artículo 1042 del Código Civil de 1930, 31 LPRA sec. 2992.[18] Por ello, el Artículo 1802 del Código Civil de 1930 establece que, "[e]l que por

---

[18] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq*. (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq*.

acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado […]". 31 LPRA sec. 5141. De este modo, la responsabilidad civil al amparo de esta norma requiere la concurrencia de tres elementos, a saber: (1) la existencia de un daño real; (2) el nexo causal entre el daño y la acción y omisión del demandado y (3) el acto u omisión, el cual tiene que ser culposo o negligente. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 768 (2023); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010); *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

En *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 900 (2016), se reiteró y recalcó que una acción para exigir responsabilidad profesional a un médico no es distinta a la de un caso ordinario de daños y perjuicios por negligencia al amparo del Artículo 1802 del Código Civil, *supra.* Por tanto, al igual que cualquier otra causa de acción por daños y perjuicios, la reclamación por impericia médica requiere que la parte demandante establezca por preponderancia de la evidencia, creída por el juzgador, que los actos de negligencia, falta de cuidado o impericia del médico causaron el daño reclamado. *Íd.*

En los casos de impericia médica es necesario que el promovente de la acción demuestre la ocurrencia de un acto médico culposo o negligente, la producción de un daño real y la relación causal entre el acto del médico y el daño sufrido. *Soto Cabral v. ELA*, 138 DPR 298, 308-309 (1995). De este modo, le corresponde al demandante probar, mediante preponderancia de la prueba,

que las acciones negligentes del médico fueron el factor que, con mayor probabilidad, ocasionó el daño sufrido y establecer el nexo causal requerido por el Artículo 1802 del Código Civil de Puerto Rico de 1930*, supra. Castro Ortiz v. Mun. de Carolina*, 134 DPR 783, 793 (1993); *Pagán Rivera v. Mun. de Vega Alta*, 127 DPR 538 (1990); *Torres Ortiz v. Plá*, 123 DPR 637 (1989); *Rodríguez Crespo v. Hernández*, 121 DPR 639, 650 (1988).

Sin embargo, en nuestra jurisdicción rige una presunción a favor del médico que sugiere que este haya observado un grado razonable de cuidado y atención en la administración del tratamiento médico y que los exámenes practicados al paciente hayan sido adecuados. Por ello, le corresponde a la parte demandante controvertir esta presunción con prueba que demuestre algo más que una mera posibilidad de que el daño se debió al incumplimiento del médico con su obligación profesional. Es decir, que la relación de causalidad no se puede establecer a base de una mera especulación o conjetura. *López v. Dr. Cañizares*, 163 DPR 119, 134-135 (2004); *Blás v. Hosp. Guadalupe,* 146 DPR 267, 324 (1998); *Santiago Otero v. Méndez*, 135 DPR 540, 549 (1994).

Al evaluar esta prueba, el tribunal debe considerar que en nuestro ordenamiento jurídico las normas mínimas de cuidado, conocimiento y destrezas que le son requeridas a los profesionales de la salud, en casos de alegada mala práctica profesional, son las de brindar a sus pacientes aquella atención que, "a la luz de los modernos medios de comunicación y enseñanza, y conforme al estado de conocimiento de la ciencia y la práctica prevaleciente de la medicina, satisface las exigencias

profesionales generalmente reconocidas por la profesión médica". *López v. Dr. Cañizares*, supra, pág. 133; *Santiago Otero v. Méndez*, supra.

Asimismo, es necesario tener presente que la negligencia del médico no se presume por el hecho de que el paciente haya sufrido un daño o que el tratamiento no haya sido exitoso. *López v. Dr. Cañizares*, supra; *Rodríguez Crespo v. Hernández*, supra, pág. 650. Al respecto, se ha dicho que, para establecer un caso *prima facie* de impericia médica, se tiene que presentar prueba sobre: (1) las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas; (2) demostrar que la parte demandada incumplió con estas normas en el tratamiento del paciente; y (3) demostrar que esta fue la causa de la lesión sufrida por el paciente. *Arrieta v. Dr. de la Vega*, 165 DPR 538, 548-549 (2005); *Medina Santiago v. Vélez*, 120 DPR 380, 385 (1988); *Rodríguez Crespo v. Hernández*, supra, pág. 650.

Lo anterior quiere decir que le corresponde a la parte demandante establecer, mediante prueba pericial, cuáles son los requisitos de cuidado y conocimiento científico requeridos por la profesión en un tratamiento determinado, las normas de conocimiento informado y la razón por la cual el médico demandado no cumplió con las mismas. *Rodríguez Crespo v. Hernández*, supra, págs. 650-651; *Medina Santiago v. Vélez*, supra, pág. 385. Conforme a la norma antes indicada, el médico solamente responde por los daños y perjuicios causados cuando actúa negligentemente, con descuido o cuando falta a la pericia profesional que exigen las circunstancias. *Ríos*

*Ruiz v. Mark*, 119 DPR 816, 820 (1987); *López v. Dr. Cañizares*, supra, pág. 134.

-C-

La Regla 44 de Procedimiento Civil, 32 LPRA Ap. V, aborda lo relativo a costas, honorarios de abogado e interés legal. Esta tiene un fin de índole disuasivo, en otras palabras, desalentar los pleitos temerarios y superfluos. *J.T.P. Development Corp. v. Majestic Realty Corp.*, 130 DPR 456, 460 (1992). En específico, la Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), dispone que:

> [e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta. […].

El concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil. *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987). Sin embargo, la temeridad ha sido definida en la jurisprudencia como "toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias". *Blas v. Hosp. Guadalupe*, 146 DPR 267, 335 (1998).

Existen varias instancias bajo las cuales puede surgir temeridad, a saber: (i) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (ii) defenderse injustificadamente de la acción; (iii) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar

la controversia a la fijación de la cuantía a ser concedida; (iv) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (v) negar un hecho que le conste es cierto a quien hace la alegación. *Íd.*, a las págs. 335-336. Se desprende de los anteriores ejemplos que el propósito de la imposición de honorarios de abogado, en casos de temeridad, es "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010), citando a *Fernández v. San Juan Cement Co., Inc.*, supra, pág. 718.

Es preciso señalar que, una vez el tribunal sentenciador concluye que una parte ha sido temeraria, es imperativa la imposición de honorarios de abogado. *PR Oil v. Dayco*, 164 DPR 486, 511 (2005). No obstante, lo anterior, aclaramos que, aunque en la sentencia haya ausencia de una conclusión expresa de que una parte fue temeraria, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado implica que el tribunal sentenciador consideró temeraria a la parte así condenada. Entiéndase que, al imponerle honorarios de abogado a una parte, el foro primario realizó una determinación de temeridad. *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999); *Montañez Cruz v. Metropolitan Cons. Corp.* 87 DPR 38, 40 (1962).

Por último, huelga acentuar que la determinación de temeridad es de índole discrecional, por lo que los tribunales apelativos solo debemos intervenir con ella

cuando nos enfrentemos a un caso en el cual se desprende diáfanamente un abuso de discreción. *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008); *Colón Santos v. Coop. Seg. Mult. PR*, 173 DPR 170, 188 (2008).

## III.

En el presente recurso, la parte apelante nos solicita que revisemos la *Sentencia* mediante la cual el foro de instancia declaró *No Ha Lugar* la *Demanda* instada por esta. A los fines de que revisemos la referida *Sentencia*, la parte apelante presentó cinco (5) errores, de los cuales, por estar relacionados entre sí, discutiremos en conjunto los primeros cuatro señalamientos de error. En estos, la parte apelante plantea que el foro primario incidió al restar valor decisivo al hallazgo de tromboembolismo pulmonar consignado en la autopsia y aceptar la tesis de que el trombo encontrado no estaba dentro del pulmón. Asimismo, indicó que el foro de instancia erró al concluir que la profilaxis tromboembólica no procedía porque el señor Rivera Rivera no reunía los criterios y, además, por el lugar donde se encontraba, adoptando así un marco de análisis equivocado que distorsionó la apreciación de la prueba y el nexo causal. Por otra parte, esbozó que el foro primario erró al concluir que la parte apelante no logró probar negligencia institucional de la Casa del Veterano ni negligencia profesional de la Dra. Santiago Torres, a pesar de las determinaciones de hecho que surgen en torno al perito de la parte apelante y del propio testimonio de la Dra. Santiago Torres. Finalmente, esgrimió que erró el foro primario al manejar de forma desigual la prueba pericial y los turnos de presentación de la evidencia, creando un

patrón procesal que configura una apariencia objetiva de prejuicio o parcialidad en favor de la parte apelada.

Puntualizamos que, según relatamos anteriormente, el caso del título inició cuando la parte apelante presentó una *Demanda* sobre daños y perjuicios contra la Casa del Veterano y la Dra. Santiago Torres. En esta, planteó que todas las condiciones agudas de emergencia con las que llegó el señor Rivera Rivera al Hospital San Cristóbal fueron resultado de la dejadez y negligencia provista por el personal de la Casa del Veterano en el cuidado médico-hospitalario. Asimismo, señaló que la parte apelada no reconoció ni manejó adecuadamente la condición del señor Rivera Rivera y le brindó a este un manejo incorrecto y negligente. Ante ello, indicó que la parte apelada es responsable por los daños ocasionados a causa de sus actuaciones y omisiones negligentes. A lo anterior, al apelante no le asiste razón. Veamos.

De entrada, puntualizamos que el ejercicio discrecional que efectúa el tribunal de instancia de apreciación de la prueba, así como de determinar hechos, está revestido de gran confiabilidad y merece deferencia por parte de este tribunal. Esto, puesto a que es el foro primario el que tuvo la oportunidad de ver, escuchar y valorar los testigos, así como sus lenguajes no verbales. Por tanto, no se debe sustituir el criterio del tribunal de instancia a menos que se demuestre que están presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique. También se podrá variar lo dispuesto por el foro primario cuando la

prueba se aparte de la realidad fáctica o resulte inherentemente imposible o creíble. Establecido lo anterior, es de ver que, si la actuación del tribunal de instancia no está desprovista de bases razonables, ni perjudica los derechos sustanciales de alguna de las partes, debe prevalecer el criterio de este foro.

Con lo anterior en mente y, acorde con las estipulaciones de hechos de las partes, el 6 de diciembre de 2021, el señor Rivera Rivera fue ingresado a la Casa del Veterano ya que necesitaba cuidado diestro de enfermería para sus múltiples condiciones médicas y asistencia para sus actividades del diario vivir. Surge, además, que a su admisión, la Dra. Santiago Torres atendió a este en calidad de médico generalista de turno en la Casa de Veteranos. Por otra parte, surge del testimonio de la Dra. Santiago Torres que, el 9 de diciembre de 2011, el señor Rivera Rivera sufrió una caída, por lo que la Dra. Campos fue quien ordenó que el señor Rivera Rivera fuera trasladado al Hospital San Cristóbal y quien lo atendió a su regreso al día siguiente. Así también, es un hecho probado que la Dra. Santiago Torres advino en conocimiento de la caída del señor Rivera Rivera el 13 de diciembre de 2011. Por otra parte, surge que, posteriormente, el 20 de diciembre de 2011 el señor Rivera Rivera se encontraba con dificultad respiratoria por lo que la Dra. Campos ordenó que fuera trasladado al Hospital San Cristóbal nuevamente. Luego, el 30 de diciembre de 2011, el señor Rivera Rivera sufrió un arresto cardiorrespiratorio y fue declarado muerto ese mismo día.

Ahora bien, tomando en consideración el testimonio de los peritos de la parte apelada, los cuales fueron la

Dra. Altieri, perito en medicina interna; Dr. Catoni, perito en medicina de familia; y el Dr. Grovas, perito de ortopedia, estos coincidieron en que la Dra. Santiago Torres no provocó las condiciones médicas desarrolladas por el señor Rivera Rivera hasta su fallecimiento. Incluso, del testimonio del médico internista, Dr. Pérez Pabón, perito de la parte apelante, surge que la Dra. Santiago Torres trató adecuadamente al señor Rivera Rivera a su llegada a la Casa del Veterano. Además, del testimonio de este, surge que el señor Rivera Rivera presentaba un cuadro amplio y muy complicado de condiciones médicas preexistentes, así como un historial de caídas. No obstante, el Dr. Pérez Pabón indicó que, luego de la caída del señor Rivera Rivera, la Dra. Santiago Torres debió tomar medidas específicas para evitar tromboembolismo. Asimismo, opinó que la caída que sufrió el señor Rivera Rivera le causó complicaciones de trauma en la columna vertebral y que dicha caída fue el detonante que llevo a la causa directa de su muerte. Sobre el particular, el Dr. Pérez Pabón explicó que el señor Rivera Rivera perdió movilidad por lo que desarrolló una trombosis venosa profunda, la cual provocó una trombosis pulmonar que le causó la muerte. Sin embargo, según surge del testimonio del Dr. Grovas, especialista en ortopedia, la caída sufrida por el señor Rivera Rivera, con impacto en la nariz, no generó trauma directo en la columna.

Según hemos expuesto, es necesario tener presente que la negligencia del médico no se presume por el hecho de que el paciente haya sufrido un daño o que el tratamiento no haya sido exitoso. Al respecto, se ha dicho que, para establecer un caso *prima*

*facie* de impericia médica, se tiene que presentar prueba sobre: (1) las normas mínimas de conocimiento y cuidado médico aplicables a los generalistas o a los especialistas; (2) demostrar que la parte demandada incumplió con estas normas en el tratamiento del paciente; y (3) demostrar que esta fue la causa de la lesión sufrida por el paciente. Lo anterior quiere decir que le corresponde a la parte demandante establecer, mediante prueba pericial, cuáles son los requisitos de cuidado y conocimiento científico requeridos por la profesión en un tratamiento determinado, las normas de conocimiento informado y la razón por la cual el médico demandado no cumplió con las mismas.

De este modo, luego de evaluar la postura de las partes y de estudiar la exposición narrativa de la prueba y documentos relacionados (la ENP) del juicio en su fondo, a la luz del mencionado estándar de revisión, concluimos que el ejercicio llevado a cabo por el foro *a quo* fue adecuado y razonable, ya que descansan en la prueba presentada. En consecuencia, dicho ejercicio de determinación de hechos probados por el foro revisado amerita nuestra completa deferencia. Sobre la negligencia de la Dra. Santiago Torres, así como de la Casa de Veteranos en el cuidado del señor Rivera Rivera, el foro primario concluyó -a nuestro juicio, de modo acertado- que no procedía imponerles responsabilidad a estos. Ello, debido a que la parte apelante no demostró que la parte apelada incurriese en conducta negligente con relación a la evaluación, diagnóstico y tratamiento brindado al señor Rivera Rivera o que, de haberlo, tuviera alguna relación causal con los daños reclamados. Además, si bien pudo haber faltado precisión y atención

a ciertos detalles en el expediente médico, no se demostró alguna relación causal entre este aspecto y los daños alegados en la *Demanda* de epígrafe. Por tanto, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, damos completa deferencia al foro primario en sus determinaciones de hechos.

Finalmente, procedemos a la discusión del quinto señalamiento de error mediante el cual la parte apelante esgrimió que el foro *a quo* erró al imponer honorarios de abogado por temeridad sin base fáctica ni jurídica. Según expusimos anteriormente, los tribunales tienen la discreción de imponer la responsabilidad del pago de una suma por concepto de honorarios de abogado a cualquier parte que haya procedido con temeridad. Aclaramos que, aunque en la sentencia haya ausencia de una conclusión expresa de que una parte fue temeraria, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado implica que el tribunal sentenciador consideró temeraria a la parte así condenada. Entiéndase que, al imponerle honorarios de abogado a una parte, el foro primario realizó una determinación de temeridad. *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999); *Montañez Cruz v. Metropolitan Cons. Corp.* 87 DPR 38, 40 (1962). En este caso, no encontramos motivo para variar la determinación del foro de instancia imponiendo temeridad a la parte apelante. Por tanto, concluimos que el quinto señalamiento de error no se cometió.

Por todo lo anteriormente expuesto, concluimos que los errores esgrimidos por la parte apelante no se cometieron, consecuentemente procedemos a sostener la *Sentencia* apelada.

**IV.**

Por los fundamentos que anteceden, se **CONFIRMA** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones